# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

| | |
|---|---|
| HEARTLAND OUTDOOR, INC. D/B/A ) <br> HEARTLAND OUTDOOR, ) <br>  ) <br> Petitioner, ) <br>  ) <br> v. ) <br>  ) <br> WILLIAM J. MILLER ) <br> Director of Industry Operations ) <br> Bureau of Alcohol Tobacco ) <br> Firearms and Explosives, ) <br>  ) <br> Respondent. ) | Case No. _____ |

**AFFIDAVIT OF ROGER THEEDE IN SUPPORT OF
EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

I, Roger Theede, being duly sworn according to law, do depose and state as follows:

1. Heartland Outdoor, Inc. d/b/a Heartland Outdoor is a federal firearms licensee ("FFL") holding a Type 1 FFL and engaged in retail sales of firearms in South Hutchinson, Kansas.

2. I am the manager of Heartland Outdoor and a "responsible person" on Heartland Outdoor's FFL.

3. ATF issued Heartland Outdoor its FFL in 2006.

4. ATF conducted a compliance inspection of Heartland Outdoor in 2008 and again in 2017, and ATF did not issue a report of violations for either of those inspections.

5. Heartland Outdoor has never, until now, been subject to adverse administrative action by ATF at any time since the issuance of its license in 2006.

1

6. For fiscal year 2022, ATF conducted 6,979 FFL inspections. Of those, only 3,806 FFLs were cited for zero violations.[1] Of the other 3,173 FFLs inspected, 1,247 received a report of violations, 606 received a warning letter, 131 were required to attend a warning conference, and only 90 were revoked.[2]

7. Heartland Outdoor had never even received a report of violations prior to its 2022 inspection, let alone received a warning letter, been required to attend a warning conference, or gone through an FFL revocation hearing.

8. Because of Heartland Outdoor's spotless record with ATF, none of the violations for which it was cited in the inspection at issue can be considered "repeat violations."

9. ATF's Final Notice of Revocation issued on July 20, 2023, cited eight categories of violations, most of which are among the most commonly cited violations in ATF's thousands of FFL license inspections every year. None of these violations were willful.

10. ATF's revocation of Heartland Outdoor's FFL appears to center on the sale of a firearm to Buddy Norris on December 16, 2021.

11. On December 11, 2021, Patti Norris attempted to purchase a firearm that she represented at that time was to be a Christmas gift for her husband, Buddy Norris. The rifle was a Springfield Saint Victor 5.56 rifle with an optic included, and Heartland Outdoor had only one in stock.

12. Patti Norris completed the necessary transaction paperwork, and when Heartland Outdoor submitted its NICS background check, a "delay" response was returned. On December 16, 2021, NICS updated its response to "denied," and Mrs. Norris was notified of the result.

---

[1] *See,* https://www.atf.gov/resource-center/fact-sheet/fact-sheet-facts-and-figures-fiscal-year-2022.
[2] *Id.,* the remaining inspections were resolved other than through the administrative action process.

13. Although she could no longer surprise her husband with the gift on Christmas morning like she wanted, Mrs. Norris told her husband of her intention to gift him the gun and accompanied him to the store so he could purchase it for himself because there was no guarantee that the firearm would still be in stock had she merely given him a gift certificate or cash at Christmas.

14. On December 16, 2021, Patti Norris returned to Heartland Outdoor with her husband, who then purchased the firearm.

15. Simply assuming that the firearm was not actually for Buddy Norris and that Mr. Norris's purchase of the firearm was in fact a "straw purchase" of the firearm for his wife, ATF cited Heartland Outdoor for willfully making false representation in its records relative to that transaction.

16. ATF provided no evidence at the hearing on this matter as to the whereabouts of the firearm at issue; no evidence that the firearm was ever owned, possessed, and even touched by Patti Norris after it left Heartland Outdoors with her husband; and no information upon which ATF could determine that the purchase was in fact a "straw purchase." Indeed, the only evidence presented was that the firearm was in fact intended to be owned by Buddy Norris, not Patti Norris.

17. When Patti Norris initially completed the ATF Form 4473 Firearm Transaction Record on December 11, 2021, she indicated that she was the "actual purchaser" of the firearm. The instructions on ATF Form 4473 explicitly state that a person who comes to an FFL to purchase a firearm as a *bona fide* gift for another is the "actual purchaser" on that transaction and should mark the form accordingly.

18. When Buddy Norris came to Heartland Outdoor to purchase the firearm himself, he also completed an ATF Form 4473, identifying himself as the "actual purchaser." His NICS background check was approved, and he went home that day with his new rifle. Mr. Norris was not prohibited from possessing or receiving the rifle and was the "actual purchaser" of the firearm at that time, the same as if his wife had given him cash or a gift card for Christmas.

19. When ATF reviewed Heartland Outdoor's 4473 Forms, it saw the denial for Mrs. Norris and the subsequent purchase of the same firearm by Mr. Norris and jumped to the conclusion that Mr. Norris must have straw purchased the firearm for his wife and that the gun was actually for her.

20. The transaction was not a "straw purchase," and Heartland Outdoor did not "falsify records" as cited by ATF in Violation 6 in its Final Notice.

21. Mr. Norris was legally entitled to purchase the firearm for himself, and his wife's inability to purchase the firearm for him has no bearing on his right to purchase the firearm for himself.

22. ATF uses FFLs' acquisition and disposition records and other required records for purposes of tracing firearms that have come to the attention of law enforcement, and Heartland Outdoor has never failed to timely reply to an ATF trace request with accurate information.

23. Heartland Outdoor has never knowingly or willfully transferred a firearm to any individual prohibited or believed to be prohibited under the law from receiving such; nor has it ever knowingly or willfully transferred a firearm to any individual without a required background check; nor has it ever knowingly or willfully failed to comply with any of its other obligations under the Gun Control Act or related regulations.

24. The ability to pursue its business viably depends on Heartland Outdoor maintaining its FFL, which has now been revoked by ATF effective September 11, 2023.

25. After receiving the initial revocation notice, Heartland Outdoor timely requested an administrative hearing pursuant to 18 U.S.C. § 923(f)(2), and such a hearing was held on May 11, 2023.

26. The hearing was conducted by ATF's Director of Industry Operations for the Kansas City Field Division, and no industry members or other objective outsiders were involved in any way.

26. Heartland Outdoor was not represented by counsel at the hearing.

27. As is the nature of such hearings, because they are not governed by the Administrative Procedures Act, Heartland Outdoor had no right to discovery, it had no subpoena powers or other ability to compel witnesses, and testimony was not under oath.

28. Heartland Outdoor received a Final Notice of Denial of Application, Revocation, Suspension and/or Fine of Firearms License from DIO Miller (the "Final Notice"), issued July 20, 2023. The Final Notice revoked Heartland Outdoor's FFL effective fifteen days from receipt of the Final Notice; however, on August 1, 2023, ATF extended the effective date to September 11, 2023, but only for dispositions of inventory already in Heartland Outdoor's possession.

29. Without the temporary relief sought by Heartland Outdoor, the immediate effectiveness of the revocation of its FFL will be to utterly dismantle Heartland Outdoor's business well before this suit is resolved by this Court on the merits, because Heartland Outdoor is not a viable business without an FFL.

30. Heartland Outdoor cannot sustain its business without an FFL for several reasons. These include but are not limited to the fact that a substantial/critical portion of Heartland

Outdoor's business is gun-related; having an FFL drives foot traffic for the rest of the non-gun part of Heartland Outdoor's business; Heartland Outdoor cannot retain its most important asset – its employees – without an FFL; it will not be able to generate enough revenue to pay the rent on its building; and it will not be able to survive on the retail sale of only ammunition and accessories (which do not require an FFL), etc.

31.     In fact, the loss of the FFL would shockingly result in Heartland Outdoor's destruction before this judicial review lawsuit was even required to be filed, because although the law provides an FFL sixty days to seek judicial review of a final notice of revocation, ATF has set the effective date of its revocation prior to such.

32     The harm is also much broader than just Heartland Outdoor, because its employees and their families depend on the business for their livelihoods and the public depends on Heartland Outdoor to provide quality products and services in a responsible and reasonable manner.

33.     The ability to purchase firearms is a necessary aspect of exercising those rights, and if products can be obtained elsewhere, the only true beneficiaries of not granting the relief sought are Heartland Outdoor's competitors.

34.     The overwhelming majority of Heartland Outdoor's business income depends on its ability to sell firearms, and the sale of firearms is what drives virtually everything else that goes on at the store, from the sale of ammunition, accessories, safety devices to all of the other accoutrements.

35.     Heartland Outdoor has continued to operate under its FFL for nearly eleven months since ATF completed its inspection of Heartland Outdoor's premises on October 4, 2023 in full compliance with the Gun Control Act and all enacting regulations.

DATED: August 31, 2023

AFFIANT FURTHER SAYTH NAUGHT.

_____
Roger Theede

STATE OF KANSAS        )
                       ) SS:
COUNTY OF RENO         )

Sworn to and subscribed in my presence on this 31st day of August, 2023.

_____
NOTARY PUBLIC

LUCINDA L.E. MOORE
Notary Public - State of Kansas
My Appt. Expires 0308-27

7