IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| HEARTLAND OUTDOOR, INC. D/B/A<br>HEARTLAND OUTDOOR,<br><br>      Petitioner,<br><br>    vs.<br><br>WILLIAM J. MILLER, Director of<br>Industry Operations Bureau of Alcohol<br>Tobacco Firearms and Explosives,<br><br>      Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 23-01182-DDC-BGS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**RESPONSE IN OPPOSITION TO PETITIONER'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Petitioner's motion for a TRO and preliminary injunction fails to meet the standard required to warrant such extraordinary relief. Petitioner has not shown a likelihood of success on the merits as Petitioner substantively addresses only one of eight willful violations found by ATF—under the applicable standard of review in this case, any *single* willful violation requires this Court to affirm ATF's revocation decision. Petitioner's allegations of irreparable harm are conclusory and unsupported. Finally, the public interest does not weigh in favor of allowing a federal firearms licensee (FFL) with numerous violations to continue operations as usual pending a ruling in this matter.

**Relevant Factual and Procedural Background**

Petitioner received its FFL in 2006. Doc. 5-1, ¶ 3. As part of its Application Inspection, Petitioner was instructed on its obligations under the Gun Control Act of 1968 (GCA), including but not limited to, how to properly complete the ATF Form 4473, the requirements for reporting multiple handgun sales, and proper completion of required acquisition and disposition records.

2007 Acknowledgement, attached as Ex. 1. As part of a compliance inspection in 2017, ATF again reviewed these requirements with Petitioner. 2017 Acknowledgement, attached as Ex. 2. Roger Theede signed the ATF Acknowledgement of Federal Firearms Regulations in 2007 and 2017 reiterating his familiarity with GCA obligations and confirming that he is responsible for familiarizing himself with all of the relevant laws and regulations. *See* Exs. 2 & 3. While ATF did not formally cite Petitioner for violations in prior inspections, compliance issues were brought to Mr. Theede's attention in 2017. Hr. Tr., 85:17-86:9; 140:2-11, attached as Ex. 3; *see also* Final Notice of Revocation, ¶ 7.b, attached as Ex. 4.

In June 2022, ATF initiated a compliance inspection of Petitioner wherein records for a one-year period, from June 29, 2021, to June 29, 2022, were inspected. Decl. of Daniel Ferris, ¶ 4, attached as Ex. 5. The inspection resulted in citations for multiple violations of the regulations issued pursuant to the GCA. A Report of Violations was issued to Petitioner on October 4, 2022, at which time Petitioner provided responses to the violations. Ex. 3, Hr. Tr., 21:11-18. On January 31, 2023, ATF issued a Notice of Revocation alleging that Petitioner willfully violated the GCA. Steven Theede and Roger Theede, responsible persons[1] for Petitioner, timely requested a hearing to review the Notice, which was held on May 11, 2023.

ATF Kansas City Field Division Director, Industry Operations (DIO), William J. Miller conducted the hearing and after consideration of all relevant facts and circumstances presented by the responsible persons, found that Petitioner had willfully committed eight of the nine alleged violations.[2] On July 20, 2023, ATF sent Petitioner the Final Notice of Revocation

---

[1] "Responsible persons," in the context of firearms licensing, means any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, policies, and practices of the Corporation, Partnership, or Association, insofar as they pertain to firearms.

[2] The last violation alleged that Petitioner failed to comply with state laws other than Kansas six times when selling to out-of-state purchasers, including failing to comply with mandatory waiting periods. While the evidence showed a violation of law, the DIO, after careful consideration of all the evidence, did not find a willful violation.

detailing specific findings of eight discrete willful violations: (1) failing to timely record the disposition of firearms on 16 occasions,[3] (2) transferring a firearm to an unlicensed person without contacting the National Instant Criminal Background Check System (NICS) before the transfer, (3) failing to timely report the sale of multiple firearms to a single purchaser 18 times,[4] (4) failing to report the theft or loss of a firearm within 48 hours of discovery of the theft/loss, (5) making a false statement or representation on a Form 4473, (6) failing to obtain complete or accurate information from a purchaser concerning the purchaser's status as a prohibited person on Form 4473 on five occasions and failing to terminate a transaction when a purchaser answered "yes" to questions pertaining to whether he was a prohibited person, (7) failing to properly record or verify a purchaser's identification on eight occasions, and (8) failing to record mandatory information relating to a NICS check on nine occasions. *See* Ex. 4, Final Notice of Revocation, ¶¶ 7-15.

The July 20, 2023, Final Notice advised Petitioner that its FFL would be revoked 15 calendar days after receipt. *Id*. at p. 1. ATF subsequently granted two *limited* stays solely to allow Petitioner time to properly dispose of its current inventory: (1) on August 1, 2023, ATF extended the deadline to sell firearms already in inventory to September 11, 2023, and (2) on September 1, 2023, ATF extended this deadline to September 26, 2023. *See* Stay Communications, attached as Ex. 6. Thus, since early August, the status quo has been that Petitioner is prohibited from acquiring firearms and ammunition; however, the stays allow Petitioner to liquidate its current inventory as long as such transactions comply with the GCA and the regulations issued thereunder.

---

[3] The October 2022 Report of Violations included 43 instances of untimely recorded dispositions. The Notice only cited the 16 firearms that were not reconciled (located) by the time the Notice was issued. At the hearing, Petitioner stated that one of the 16 firearms had been located, leaving 15 firearms that Petitioner could not account for.

[4] In two instances, Petitioner did not report the multiple sales at all.

Petitioner filed this action on September 1, 2023. The current motion asks for an order (1) "preserving the status quo" and (2) enjoining ATF "from enforcing the revocation of [Petitioner's] FFL." ATF opposes both requests.

## Legal Standard

### I. Preliminary Injunction[5]

"A preliminary injunction is an extraordinary remedy," and "the moving party must demonstrate a 'clear and unequivocal' right to such relief." *Carpenters Pension Tr. Fund of Kan. City*, 2023 WL 1394884, at *2 (quoting *Petrella v. Brownback*, 787 F.3d 1242, 1256 (10th Cir. 2015)). In the Tenth Circuit, the moving party generally "must satisfy four factors to deserve a preliminary injunction: '(1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm if the injunction is not granted; (3) the balance of equities is in the moving party's favor; and (4) the preliminary injunction is in the public interest.'" *Id.* (quoting *Verlo v. Martinez*, 820 F.3d 1113, 1126 (10th Cir. 2016)). When the government is a party, the Court's inquiry into the third and fourth factors merges. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). "The court enjoys broad discretion to decide whether to grant a preliminary injunction." *Carpenters Pension Tr. Fund of Kan. City*, 2023 WL 1394884, at *2.

Because preliminary injunctions are limited and intended to preserve the relative positions of the parties, the Tenth Circuit has identified three types of "specifically disfavored" preliminary injunctions, including "preliminary injunctions that alter the status quo." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258-59 (10th Cir. 2005) (internal citations omitted). Such disfavored injunctions "must be more closely scrutinized." *Id.* at 1259. When a preliminary injunction seeks to alter the status quo, as Petitioner seeks in this matter, "the movant 'must

---

[5] The same standard applies to requests for TROs. *Carpenters Pension Tr. Fund of Kan. City v. Indus. Maint. of Topeka, Inc.*, 2023 WL 1394884, at *1 n.1 (D. Kan. Jan. 31, 2023).

make a *strong showing* both with regard to the likelihood of success on the merits and with regard to the balance of harms.'" *Brooks v. Colo. Dep't of Corr.*, 730 Fed. Appx. 628, 630-31 (10th Cir. 2018) (citation omitted). This is a "heightened burden" upon the movant, requiring a "showing 'that the exigencies of the case support' his motion." *Id.* at 631 (quotation omitted).

**II.     *De Novo* Review of an FFL Revocation**

Congress enacted the GCA to help prevent prohibited individuals from obtaining firearms. *CEW Props. v. United States DOJ*, 979 F.3d 1271, 1273 (10th Cir. 2020). The Act requires anyone "engage[d] in the business of importing, manufacturing, or dealing in firearms" to obtain an FFL and to maintain "records of importation, production, shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe." 18 U.S.C. § 923(a), (g)(1)(A). If a licensee "has willfully violated any provision" of the GCA or rules promulgated thereunder, the license may be revoked. 18 U.S.C. § 923(e). Under 18 U.S.C. § 923(f)(3), an "aggrieved party may" file a petition "for a de novo judicial review" of a revocation, and "the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing."

"Courts have interpreted the de novo standard of review under 18 U.S.C. § 923(f) narrowly." *CEW Props*, 979 F.3d at 1277 (citation omitted). "Although § 923(f)(3) directs district courts to conduct 'de novo judicial review' of revocation decisions, it confines the inquiry to whether ATF was 'not authorized to . . . revoke the license.'" *Id.* (citing 18 U.S.C. § 923(f)(3); *Borchardt Rifle Corp. v. Cook*, 684 F.3d 1037, 1042 (10th Cir. 2012)). Thus, "in reviewing a petition for judicial review of an ATF license revocation, the court may grant relief only if it 'decides that the Attorney General was not authorized to deny the application or to

5

revoke the license.'" *Borchardt*, 684 F.3d at 1042 (quoting 18 U.S.C. § 923(e)). In other words, if the Court finds sufficient evidence to conclude that a willful violation occurred it should deny relief, even if the Court may have reached a different conclusion with the same facts. *See Wilson Gun Works & Design, LLC v. Albro*, 2023 WL 5516307, at *4 (W.D.N.C. Aug. 25, 2023) (ruling in favor of the ATF, even if the court viewed it as a "heavy-handed exercise of revocations").[6]

## Argument

This Court should deny Petitioner's motion because Petitioner had not met its burden to show likely irreparable injury, establish a likelihood of success on the merits, or show that the public interest is on its side.

**I.  Petitioner has failed to show irreparable harm.**

As previously stated by this Court, "irreparable harm is the first touchstone of a preliminary injunction and a TRO," and courts "consistently note[] that because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Uhlig LLC v. CoreLogic, Inc.*, 2021 WL 5758564, *2 (D. Kan. Dec. 3, 2021) (quoting *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260-61 (10th Cir. 2004)) (cleaned up).

While irreparable harm "does not readily lend itself to definition . . . '[t]o constitute irreparable harm, an injury must be certain, great, actual, and not theoretical.'" *Id*. at 3 (quoting *Dominion Video*, 356 F.3d at 1262; *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th

---

[6] Courts overwhelmingly agree that this is a limited inquiry into whether ATF was authorized to revoke the license. *See Morgan v. U.S. Dep't of Just.*, 473 F. Supp. 2d 756, 762 (E.D. Mich. 2007) ("recognizing that the standard of review "does not call upon this Court to decide whether it would revoke the license in its own judgment, but whether all of the evidence presented is sufficient to justify the Attorney General's revocation"); *see also Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356 (5th Cir. 2017); *Armament Servs. Int. v Yates*, 2017 WL 5886048 (E.D. Pa 2017); *Arwady Hand Trucks Sales, Inc. v. Vander Werf*, 507 F. Supp. 2d 754 (S.D. Tex. 2007); *Pinion Enters., Inc. v. Ashcroft*, 371 F. Supp. 2d 1311, 1317 (N.D. Ala. 2005).

Cir. 2003)). Further, "Irreparable harm is not harm that is merely serious or substantial." *Id.* (quotation omitted). "A claim of '[p]urely speculative' harm does not suffice; instead, a plaintiff must show that 'significant risk of irreparable harm' is present to meet the burden." *Id.* (quoting *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009)). If a party offers "no more than 'wholly conclusory' statements," it does not meet its burden. *See id.* (denying preliminary relief and finding plaintiff's allegations unquantified, conclusory, and vague). Moreover, as recently recognized by a Court denying a request for a preliminary injunction pending a de novo review sought by another FFL, "self-inflicted harm does not constitute irreparable harm." *Posey v. Garland*, 2023 WL 5435609, at *10 (E.D. Tenn. Aug. 23, 2023).

Here, Petitioner acknowledges that "purely speculative harm will not suffice" to meet this prong yet provides only unsupported and speculative claims that Heartland's "business will be lost" and there "will be no business left to care about." Petitioner is an outdoor sporting goods store, selling various items other than firearms and ammunition. Ex. 3, Hr. Tr., 30:13-20 (Mr. Ferris describing it as "a large hunting and other type of outdoor sporting activities. It certainly wouldn't be described solely as a gun store. There's an extensive inventory of other items."). Further, even with its FFL revoked, Petitioner may legally sell its inventory to other FFLs or consign the inventory to another FFL to sell on consignment or at auction. Aside from the bald conclusions referenced above, Petitioner identifies no facts suggesting that harm would befall the remainder of its broad-scale business.

Petitioner's actions further contradict its conclusory allegations of irreparable harm. The July 20, 2023 Final Notice informed Petitioner that the revocation goes into effect 15 days from receipt of the Notice. ATF agreed to stay full revocation of the FFL until September 11, 2023, but *only* so that Petitioner could dispose of its current inventory. Still Petitioner waited until

September 1 to seek "emergency" relief from this Court. At that point in time, Petitioner's ability to acquire firearms had already been revoked for several weeks. The eleventh-hour request for emergency relief cuts against an argument of irreparable harm. Courts have held that a lack of diligence, even without prejudice to defendant, may preclude preliminary injunctive relief. *Majorica, S.A. v. R.H. Macy & Co., Inc.*, 762 F.2d 7, 8 (2d. Cir. 1985).

Petitioner has failed to demonstrate irreparable harm, and its motion may be denied for this reason alone. Regardless, even if the Court found irreparable harm, that is not enough to warrant a preliminary injunction. *See Equity Bank v. McGregor*, 2022 WL 1102640, at *3 (D. Kan. Apr. 13, 2022) (denying preliminary relief after finding irreparable harm). The movant must also meet the remaining factors, which Petitioner cannot do here.

**II.    Petitioner cannot establish a likelihood of success on the merits.**

The Tenth Circuit has explained that the willfulness requirement of 18 U.S.C. § 923(e) is met by "plain indifference toward known legal obligations." *Borchardt*, 684 F.3d at 1042. For a violation to meet the willful standard, Petitioner "must have (1) known and (2) been plainly indifferent to its legal obligations." *CEW Props.*, 979 F.3d at 1279. Because willfulness is "rarely provable by direct evidence," willfulness may be shown by circumstantial evidence. *See Borchardt Rifle Corp.*, 684 F.3d at 1043 (quotation omitted). For example, the Tenth Circuit recognizes the following as examples of evidence that can support a finding of willfulness: (1) that a licensee received training from ATF in obtaining its FFL and during inspections, (2) periodic compliance by the licensee—showing a licensee knew how to meet its obligations and did so at other times, (3) the length of time a licensee has held its license, (4) the magnitude of violations, and (5) statements to investigators. *See CEW Props.*, 979 F.3d at 1279.[7]

---

[7] Petitioner filed a Notice of Supplemental Authority, identifying *Paducah Shooters Supply, Inc. v. Rogers*, 2023 WL 5769364 (W.D. Ky. Aug. 12, 2023). First, *Paducah Shooters Supply* is not binding precedent. Second, this

Petitioner's argument as to its likelihood of success on the merits focuses on two points: (1) Petitioner did not falsely certify information required by the GCA in a transaction taking place between December 11, 2021, and December 16, 2021; and (2) this Court cannot find willfulness on behalf of Petitioner as to the other *seven* discrete violations (including approximately 59 separate violations of the GCA) because these were not repeat violations. Petitioner's failure to address the merits of these seven violations and minimization of these as "common paperwork violations" is telling. Rather, Petitioner relies on outlier decisions from other jurisdictions and wholly fails to acknowledge the Tenth Circuit's recent decisions in this area of the law.

### A. The December 16, 2021, sale of a firearm to Mr. Norris.

When an FFL has reason to believe that the person completing the ATF Form 4473 is not the actual purchaser, it is a violation of the GCA to make that sale. Specifically, selling to a straw-purchaser results in the FFL falsely certifying the identity of the actual transferor/buyer of the firearm. *See* 27 C.F.R. § 478.128(c). In December 2021, Mrs. Norris attempted to purchase a firearm, and the day that she was denied, her husband came into the store and purchased the exact same firearm. Both completed ATF Form 4473, certifying they were the actual transferee/buyer. The DIO was not persuaded by Petitioner's explanation and found that the Petitioner falsified the Form 4473 in subsequently certifying Mr. Norris as the actual purchaser. While ATF maintains that Petitioner willfully violated the GCA in conjunction with this sale, for purposes of

---

Court should not treat it as persuasive as it mis-applies the willfulness standard. After initially stating that willfulness requires "intentional, knowing, or reckless disregard," that court found that the evidence suggests "mistakes (potentially grave ones, to be sure) rather than intentional violations" and noted the Government did not "think that there was a bad actor here." *Paducah Shooters Supply, Inc.*, 2023 WL 5769364, at *1. As the cases cited by Petitioner acknowledge, there is no requirement of a bad actor nor is there a requirement of intentional mens rea, as contemplated in the criminal context. Third, even if this Court were to find the *Paducah Shooter's* reasoning availing, it runs counter to binding Tenth Circuit jurisprudence, such as *CEW Props.* and *Borchardt Rifle Corp.*

this motion and this action, it is not necessary for Petitioner to have willfully violated the GCA in conjunction with this sale, because Petitioner willfully violated the GCA in seven other ways.

### B.  Heartland has failed to show a likelihood of success as to the remaining seven violations in this case.

Petitioner's sole argument relating to the other seven violations wholly fails to address the facts of *this* case and strongly—and incorrectly—suggests that an FFL cannot be revoked unless the licensee has repeatedly violated the GCA and received prior warnings.  In essence, Petitioner advocates that this Court adopt a framework *requiring* ATF to conduct multiple inspections, issue multiple notices of violation, and give FFL holders numerous chances to cure the same or similar violations before a license may be revoked—this directly conflicts with binding Tenth Circuit precedent and should be rejected.

An FFL may be revoked upon the finding of a single willful violation of the GCA.  *See*, *e.g.*, *Augustson v. Holder*, 728 F. Supp. 2d 1279, 1286 (D.N.M. 2010) ("Because it is within the ATF's discretion to revoke a license for even a single willful violation of the GCA, seven violations is more than sufficient to warrant revocation."); *Appalachian Res. Dev. Corp. v. McCabe*, 387 F.3d 461, 464 (6th Cir. 2004) ("Furthermore, it has been recognized that a single violation of the GCA is a sufficient basis for denying an application or revoking a firearms dealer's license."); *Trader Vic's Ltd v. O'Neil*, 169 F. Supp. 2d 957, 693 (N.D. Ind. 2001) (same). Additionally, "[t]he magnitude of the violations—both their quantity and seriousness—can support a finding of willfulness." *A-TAC Gear Guns Uniforms LLC. v. U.S. Dep't of Justice*, 530 F. Supp. 3d 1033, 1040 (D. Colo. 2021).

That cases exist where revocations occurred after an FFL received multiple formal reports of violation does not mean that licensees *must* receive a prior warning.  Indeed, courts nationwide have repeatedly upheld revocations after the first report of violation.  *See*, *e.g.*,

*Creager v. Bureau of Alcohol*, 2016 WL 1077123, at *13 (D. Md. Mar. 18, 2016) (noting that the GCA does not require "multiple warnings or citations" as petitioners in other cases had received); *Taylor v. Hughes*, 2013 WL 752838, at *3 (M.D. Pa. Feb. 27, 2013) ("it is clear that a licensee may be found to have willfully violated the Gun Control Act even if he has never previously been cited for violations"); *Nat'l Lending Grp. v. Mukasey*, 2008 WL 5329888, at *8 n. 13 (D. Az. Dec. 19, 2008) (same); *Manuele v. Acting Director, ATF*, 2008 WL 2168734, at *4 (C.D. Ill. May 22, 2008) (same); *Francis v. ATF*, 2006 WL 1047026, at *4 (E.D. Okla. Apr. 20, 2006) (same). In *Web Guy Enterprises v. Bowers*, a case cited by Petitioner, the Court granted summary judgment in favor of ATF where a notice of revocation was issued after the first inspection of the FFL. Case No. 15-06139 (W.D. Mo. 2016), attached as Ex. 7.

The Tenth Circuit has expressly rejected the notion that prior violations and warnings are necessary before an FFL may be revoked. *CEW Props.*, 979 F.3d at 1281 n. 12 (rejecting an argument that "ATF never warned [him] that his violations could result in revocation," noting that "[a]lthough prior warnings *can* establish willfulness, they are not necessary for such a finding") (internal citations omitted). Moreover, the district court, in granting summary judgment for the petitioner in that matter, found that "[g]iven the length of time Petitioner had held an FFL, the amount of information and training [licensee] had received, and the fact that [licensee] twice affirmed that he understood he needed to familiarize himself with federal firearms regulations, the Court finds that Petitioner's violations were willful." *CEW Props. Inc. v. U.S. DOJ*, 2019 WL 2305154, at *3 (W.D. Okla. May 30, 2019).

Petitioner has not met its burden to show a likelihood of success on the merits. Rather, Petitioner only vaguely asserts that "none of these [seven] violations were willful," but fails to explain why the facts of this case support this conclusion—they do not. While Petitioner seeks

11

to minimize its violations, the violations at issue are both serious in nature and large in quantity. Further, Petitioner has had an FFL for nearly 16 years. In that time, Petitioner has received training from ATF at least twice—which it acknowledged in writing—and has demonstrated knowledge of its obligations by previously complying with the violations that are now cited in the Notice of Revocation.

In the Final Notice of Revocation, ATF DIO Miller made specific and individualized findings as to why eight of the nine violations in the Notice of Revocation were willful violations, and conducted this analysis based upon well-established precedent. *See generally* Ex. 4, Final Notice. For example, as to Violation 4, the DIO found a willful violation where Petitioner failed to timely report multiple firearm sales 18 times. Petitioner received prior training regarding the requirements of reporting multiple firearm sales. The ATF Form 4473—the *only* form required for all sales—specifically reminds FFLs that multiple sales of handguns within five business days must be reported *by the close of business*. This reminder is in bold immediately under the transferor's signature. *See* Form 4473, attached as Ex. 8. Likewise, the Form for reporting such sales explicitly identifies the reporting period as "by the close of business." *See* Form 3310.4, attached as Ex. 9 (including both forms utilized during the compliance period*)*. Also, ATF noted during the compliance inspection that Petitioner had properly complied with this requirement at other times, which further demonstrates knowledge and an ability to comply. Ex. 4, Final Notice, ¶ 10; Ex. 3, Hr. Tr., pp. 71:6-15. As noted by the DIO, the failure to properly report multiple sales bears significant public safety consequences as it hinders law enforcement efforts. Petitioner's knowledge of this requirement and failure to comply with it on numerous occasions evidences a plain indifference to its legal obligations and is therefore willful.

Violations 2 and 5 concern the maintenance of Petitioner's Acquisition and Disposition (A&D) Record. Petitioner cannot claim a lack knowledge of its obligation to ensure that all firearms it takes into its inventory are properly tracked. Petitioner received training on this requirement and demonstrated the ability to properly maintain its A&D records in other instances. Despite prior compliance in this regard, Petitioner failed to timely report a firearm as lost or stolen and initially could not account for 43 firearms. While during and after the inspection Petitioner was able to reconcile 27 of these firearms, at the time of the Report of Violations, Petitioner had not accounted for 16 firearms.[8] DIO Miller found that Petitioner offered no plausible defense to either of these violations and made specific note that Petitioner acknowledged it had been trained on the record keeping requirement and the requirement to timely report missing firearms. Ex. 4, Final Notice, ¶¶ 8, 11. As recognized by DIO Miller, "when a firearm goes missing from inventory there is an additional risk to public safety and this hinders traceability of these firearms." *Id.* at ¶ 8.

Similar evidence supports Petitioner's willfulness as to Violations 3, 7, 8, and 9 (failing to properly conduct a background check, failing to ensure prohibited persons questions are completed, failing to properly record identification documents, and failing to properly record NICS information, respectively). Specifically, Petitioner had been trained by ATF on multiple occasions how to properly complete the ATF Form 4473, demonstrated an ability to comply in other instances, and failed to comply in the numerous cited occasions. ATF's public safety mission of ensuring that firearms do not come into the possession of those Congress has deemed unfit to possess firearms is greatly hindered when FFLs fail to complete or fail to ensure a transferee has properly completed the ATF Form 4473.

---

[8] At the May 2023 hearing, Petitioner represented it had located one other firearm.

13

Petitioner attempts to lessen the above violations by characterizing them as "common paperwork violations." Doc. 5, p. 7, fn 4. But "'[i]mproper recordkeeping is a serious violation.'" *Fin & Feather Sport Shop, Inc. v. U. S. Treasury Dep't.*, 481 F. Supp. 800, 806 (D. Neb. 1979) (*quoting Huddleston v. United States*, 415 U.S. 814, 824 (1974)). "[A] firearms dealer, by failing to keep the required records, seriously undermines the effectiveness and purpose of the Act and ultimately endangers society." *Id*. "Nothing in the Gun Control Act or the accompanying regulations exonerates licensees from complying with 'nit-picky' rules or trammels the ATF's authority to revoke licenses for willful violations of 'nit-picky' rules." *Willingham Sports, Inc. v. ATF*, 348 F. Supp. 2d 1299, 1309 (S.D. Ala. 2004); *Dick's Sport Center, Inc. v. Alexander*, 2006 WL 799178, at *5 (E.D. Mich. Mar. 29, 2006) (recognizing a "failure to comply with exacting book keeping regulations" hinders ATF's important functions).

Petitioner makes no effort to explain the circumstances or specifically challenge the DIO's findings as to seven violations. By wholly failing to address the substance of these seven violations—only one of which needs to be willful to mandate a denial of the Petition, Petitioner has failed to meet its burden to establish any likelihood of success on the merits, let alone meet its heightened burden to make a "strong showing" of a likelihood of success. *See Brooks*, 730 Fed. Appx. 628 at 630-31; *Carpenters Pension Tr. Fund of Kan. City*, 2023 WL 1394884, at *4.

### III.   The public interest weighs in favor of denial of Petitioner's Motion.

The public has a strong interest in compliance with the law, including that entities granted an FFL adhere to every requirement of the GCA. And, while individuals have Second Amendment rights, entities do not, and Petitioner has not shown a tangible harm that will come to the public if Petitioner cannot sell firearms pending resolution of its Petition.[9] Petitioner has

---

[9] For example, unlike in *Streicher's Inc. v. Hummel*, where the Minnesota District Court granted a preliminary injunction, Petitioner has not alleged that it is the "exclusive" dealer of certain weapons to a law enforcement

offered nothing to show that individuals will not have access to other avenues for the legal purchase of firearms. In a recent denial of a preliminary injunction, the District of North Dakota noted, "[t]he balance of harms and the public interest would seem to favor the ATF as well, as the ATF is obligated to enforce firearm sales regulations and there clearly exists a need to protect the public from illegal firearms sales." *Bismanguns, LLC. v ATF*, No. 23-cv-33, at *5 (D.N.D. May 11, 2023), attached as Ex. 10. Indeed, as recognized by Petitioner, "The point [of the GCA] is not to punish firearms dealers for violations, but rather to protect the public from firearms ending up in the wrong hands, which can easily happen where a licensed dealer repeatedly demonstrates plain indifference to the GCA requirements." Allowing an FFL that has engaged in numerous violations of the GCA to continue operating after ATF has revoked its license does not serve the public.

## Conclusion

Petitioner has failed to meet and cannot meet its burden to obtain preliminary relief in this action.[10] Petitioner has provided only conclusory and unsupported statements that it will suffer irreparable harm, and regardless, Petitioner cannot demonstrate a likelihood of success on the merits or that the public interest weighs in its favor. Accordingly, Respondent respectfully requests that this Court deny Petitioner's requested relief in full.

---

agency, that it sells 85% of its goods to a large metropolitan police force (which procures 90% of its needs from that FFL), or that it is the only dealer with a license to sell certain weapons in the state.

[10] Petitioner also includes a footnote arguing that 18 U.S.C. §§ 923(f)(2) and 925(b) seemingly require a stay during the pendency of this action. This undeveloped argument has been rejected by other Courts and should be rejected by this Court. *See, e.g.*, *Posey*, 2023 WL 5435609, at *4-7 (providing a lengthy discussion, rejecting petitioner's arguments, and recognizing such arguments are not novel, but previously rejected by other courts); *Garner v. Lambert*, 530 F. Supp. 2d 953 (N.D. Ohio 2008) (concluding that "the stay provided for by § 923(f)(2) applies only during the administrative review process" and the plaintiff's "argument regarding § 925(b) does nothing to alter this conclusion"), *Mountaineer Gun Sales, LLC v. Bureau of ATF*, 2012 WL 194079, at *4–5 (N.D. W. Va. Jan. 23, 2012) (rejecting the same arguments); *RMS, Inc. v. Herbert*, 2006 WL 5376120, at *2 (D. Md. Mar. 15, 2006) (recognizing that "27 C.F.R. § 478.78 make[s] clear that ATF can revoke the license after a hearing has been held and a Notice of Revocation has been served on the licensee").

Submitted by,

KATE E. BRUBACHER
United States Attorney
District of Kansas

s/ *Sarah Burch Macke*
Sarah Burch Macke, KS #25948
Assistant United States Attorney
301 N. Main, Suite 1200
Wichita, KS  67202
Telephone:  (316) 269-6481
Facsimile:  (316) 269-6484
E-mail: sarah.macke@usdoj.gov
*Attorneys for the United States*

## CERTIFICATE OF SERVICE

I certify that on September 13, 2023, the foregoing was electronically filed with the Court using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

s/ *Sarah Burch Macke*
Sarah Burch Macke
Assistant United States Attorney