IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**HEARTLAND OUTDOOR, INC. D/B/A HEARTLAND OUTDOOR,**

    **Petitioner,**

v.

**WILLIAM J. MILLER**
**Director of Industry Operations**
**Bureau of Alcohol Tobacco**
**Firearms and Explosives,**

    **Respondent.**

Case No. 23-1182-DDC-BGS

## MEMORANDUM OPINION

On September 1, 2023, petitioner Heartland Outdoor, Inc. filed a Petition for Judicial Review (Doc. 1) of an administrative decision by respondent, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). That decision revoked Heartland's federal firearms license (FFL). Heartland also filed a Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 4). Heartland asked the court to issue a temporary restraining order and a preliminary injunction, restraining ATF from revoking Heartland's FFL while the court reviews the administration's actions. ATF filed a Response in Opposition (Doc. 16), arguing that Heartland hasn't shown likelihood of success on the merits or irreparable harm. Heartland replied (Doc. 17), reaffirming that its business would fail without an FFL and addressing additional FFL violations. On September 22, 2023, the court denied Heartland's requested restraining order and preliminary injunction (Doc. 20). The court now issues this Opinion, reflecting the result announced its Memorandum and Order, and fully explaining its reasoning.

I.      **Factual Background**

On September 15, 2023, the court held a hearing on Heartland's Motion for TRO and Preliminary Injunction (Doc. 4). Unless otherwise specified, the court takes the following facts from the parties' filings, proffers, and limited evidence presented at the hearing.

Heartland is an outdoor sporting and hunting store in South Hutchinson, Kansas. Doc. 16-3 at 5 (ATF Hr'g Tr. 30:16–20). It also sells firearms under a Type 1 FFL. Doc. 5-1 at 2 (Theede Aff. ¶ 1). ATF has inspected Heartland for FFL compliance three times: in 2008, 2017, and 2022. *Id.* at 2, 3 (Theede Aff. ¶¶ 4, 7). The ATF reported no violations during the 2008 and 2017 inspections. *Id.* at 2 (Theede Aff. ¶ 4). The ATF never issued Heartland a violations report, a warning letter, or any other adverse administrative notice. *Id.* at 2, 3 (Theede Aff. ¶¶ 4, 5, 7). But that changed on January 31, 2023, when the ATF notified Heartland of its intent to revoke Heartland's FFL. Doc. 16-4 at 4 (Final Notice of Revocation).

Heartland argues that ATF's decision to revoke Heartland's FFL stems from a December 16, 2021, firearm sale discovered during the 2022 inspection. Doc. 5-1 at 3 (Theede Aff. ¶ 10). On that December 11, Patti Norris tried to purchase a firearm from Heartland as a Christmas gift for her husband, Buddy Norris. *Id.* (Theede Aff. ¶ 10). Ms. Norris asserted, with ATF Form 4473, that she was the "actual purchaser."[1] *Id.* at 4 (Theede Aff. ¶ 17). But Heartland couldn't sell Ms. Norris the firearm because she failed the National Instant Criminal Background Check System ("NICS"). *Id.* at 3 (Theede Aff. ¶ 12). On December 16, 2021, Ms. Norris returned to Heartland, this time Mr. Norris came along with her. *Id.* at 4 (Theede Aff. ¶ 14). Mr. Norris passed the NICS background check and purchased the firearm himself. *Id.* at 5 (Theede Aff. ¶ 18). He listed himself as the "actual purchaser" on ATF Form 4473. *Id.*

---

[1]    "ATF Form 4473 states that a person is an actual purchaser if he purchases a gun for his own personal use or as a gift." *United States v. Karani*, 984 F.3d 163, 175 (1st Cir. 2021).

The ATF describes the December 16 transaction as a "straw purchase," whereby Mr. Norris impermissibly purchased a firearm for his wife after Ms. Norris had failed the background check. *Id.* at 4 (Theede Aff. ¶ 15). Heartland denies that the transaction was a "straw purchase." *Id.* at 5 (Theede Aff. ¶ 20). It counters that Ms. Norris's inability to purchase the firearm for Mr. Norris has no bearing on Mr. Norris's right to purchase the firearm for himself. *Id.* (Theede Aff. ¶ 21). Heartland suggests that the situation is the equivalent of Ms. Norris giving Mr. Norris a gift card or cash to purchase the firearm. *Id.* at 4 (Theede Aff. ¶ 13).

Heartland requested an administrative hearing to challenge its FFL revocation, and a hearing was held in Kansas City, Missouri, on May 11, 2023. *Id.* at 6 (Theede Aff. ¶¶ 25–26). Heartland appeared without counsel for this hearing. *Id.* (Theede Aff. ¶ 26).[2] On July 20, 2023, the ATF issued Heartland a Final Notice of Application Revocation, charging Heartland with eight violations of the Gun Control Act (GCA), 18 U.S.C §§ 921–34. *Id.* (Theede Aff. ¶ 28).

- **Violation 2:** Untimely Record of Dispositions, violating 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.125(e) on 16 occasions

- **Violation 3:** Failure to Conduct NICS Background Check; violating 18 U.S.C. § 992(t) and 27 C.F.R. § 478.102 on one occasion

- **Violation 4:** Failure to Timely Report Multiple Handgun Sales, violating 18 U.S.C. § 923(g)(3)(A) and 27 C.F.R. § 478.126a on 18 occasions

- **Violation 5:** Failure to Report Theft/Loss, violating 18 U.S.C § 923(g)(6) and 27 C.F.R § 478.39a on one occasion

- **Violation 6:** False Statement or Representation, violating 18 U.S.C. § 923(a)(1)(A) and 27 C.F.R. § 478.128(c) on one occasion

- **Violation 7:** Incomplete/Inaccurate ATF Form 4473, violating 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.124(c)(1) on 6 occasions

---

[2] Mr. Theede's Affidavit contains two paragraphs numbered 26. This fact appears in the second paragraph 26.

3

- **Violation 8:** Failure to Correctly Record Identification, violating 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.124(c)(3)(i) on 8 occasions

- **Violation 9:** Inaccurate Recording of Dispositions to Non-Licensees, violating 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.124(c)(3)(iv) on 9 occasions

Doc. 16-4 at 5–8 (Final Notice of Revocation). ATF's decision revoked Heartland's FFL, effective 15 days from Heartland's receipt of the Final Notice. *Id.* at 11. On August 1, 2023, the ATF extended the effective date to September 11, 2023, giving Heartland time to sell its remaining inventory. Doc. 16-6 at 1 (Miller Extension Letters). Later, ATF again extended the revocation's effective date, making it effective on September 28, 2023. *Id.* at 2.

On September 1, 2023, Heartland filed this action for judicial review. Doc. 1 (Pet. Judicial Review). It also requested a TRO and preliminary injunction, halting ATF's revocation of its FFL during judicial review. Doc. 4 (Mot. TRO & Preliminary Inj.). Heartland argues that ATF improperly revoked its FFL and that its business will fail absent injunctive relief. *Id.* at 1. On September 13, 2023, ATF filed a Response opposing a TRO or preliminary injunction. *See* Doc. 16 (Resp. Opp'n Pet.'s Mot. TRO & Preliminary Inj.). ATF argued that it correctly decided to revoke Heartland's FFL, that Heartland won't suffer irreparable harm absent the injunction, and that the equities favor rejecting Heartland's request. *Id.* at 1. Heartland replied on September 14, 2023. *See* Doc. 17 (Reply Mem. Supp. Mot. TRO & Preliminary Inj.). This Reply reiterated Heartland's long-time "spotless record" and distinguished its violations from other cases where ATF has revoked retailers' FFLs. *Id.* at 2. For reasons explained below, the court concludes that Heartland has failed to demonstrate a likelihood of success on the merits and denies Heartland's Motion for TRO and Preliminary Injunction (Doc. 4).

The court first addresses the TRO and preliminary injunction standard. It then applies that standard to the parties' arguments here.

**II.     Legal Standard**

  **A.     Temporary Restraining Order and Preliminary Injunction**

Fed. R. Civ. P. 65(a) authorizes federal district courts to issue preliminary injunctions. The relief afforded under Rule 65 embraces a limited purpose—a court issues a preliminary injunction "merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). The Tenth Circuit instructs that the moving party—here, petitioner Heartland—must satisfy four factors to secure a preliminary injunction or TRO: [3]

(1) It [the moving party] is substantially likely to succeed on the merits;
(2) it will suffer irreparable injury if the injunction is denied;
(3) its threatened injury outweighs the injury the opposing party will suffer under the injunction; and
(4) the injunction would not be adverse to the public interest.

*Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013) (internal quotation marks and citation omitted) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "A party seeking a preliminary injunction must prove that *all four* of the equitable factors weigh in its favor." *Sierra Club*, 539 F. App'x at 888 (emphasis in original). But the third and fourth factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The Tenth Circuit recognizes that likelihood of success on the merits is "the first and most important preliminary-injunction factor." *Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1229 (10th Cir. 2018). If the movant fails to establish likelihood of success on the

---

[3]     Heartland seeks a preliminary injunction or a temporary restraining order. Here, since ATF was served and appeared for the hearing on September 15, 2023, the court elects to treat the matter as a preliminary injunction. And this Opinion thus couches the analysis in those terms. But it really doesn't matter because a TRO "follows the same procedure as for a preliminary injunction motion." *Sac & Fox Nation of Mo. v. LaFaver*, 905 F. Supp. 904, 907 (D. Kan. 1995). And the same four-part standard applies to a TRO request. *Id.*

merits, "it is unnecessary to address the remaining factors of the preliminary injunction standard." *Johnson & Johnson Vision Care, Inc. v. Reyes*, 665 F. App'x 736, 747 (10th Cir. 2016). The decision whether to issue "a temporary restraining order or other preliminary injunctive relief is within the sound discretion of the district court." *Sac & Fox Nation*, 905 F. Supp. at 906.

Preliminary relief—whether in the form of a TRO or a preliminary injunction—"is an extraordinary remedy, the exception rather than the rule." *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019). The Circuit recognizes "three types of specifically disfavored preliminary injunctions," ones where a petitioner must "satisfy an even heavier burden," and establish that the four preliminary injunction factors "weigh heavily and compellingly" in petitioner's favor:

(1) preliminary injunctions that alter the status quo;

(2) mandatory preliminary injunctions; and

(3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.

*O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004), *aff'd*, 546 U.S. 418 (2006). The court scrutinizes disfavored injunctions "more closely . . . to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.*

**II.   Analysis**

Heartland asks the court here to stay the ATF from revoking its FFL. It argues that without an injunction, Heartland can't purchase and sell firearm inventory. And, without an FFL, Heartland forecasts a loss from gun sales as great as $100,000 annually. While Heartland sells merchandise other than firearms, it argues that these ancillary sales accompany firearm

6

purchases and don't provide sufficient revenue or independent foot traffic to sustain its business. It argues that even if it's successful in its administrative appeal, Heartland might not have a business to return to if the court doesn't stay ATF from revoking Heartland's FFL.  ATF contends that the court should deny Heartland's request because Heartland hasn't met its burden to show that it deserves a preliminary injunction.

As a threshold matter, the court must decide whether Heartland's request for preliminary injunction falls into one of the three "particularly disfavored" injunctions.  *Id.*  Indeed, Heartland faces a heavier burden because its motion seeks injunctive relief that affords Heartland "all the relief that it could recover at the conclusion of a full trial on the merits." *Id.*  Presently, Heartland can't purchase new firearms, but it may sell down its existing firearm inventory.  On September 26, ATF's Final Notice, revoking Heartland's FFL, took effect.  If the court were to grant Heartland the TRO or preliminary injunction it seeks, Heartland would maintain its FFL to buy and sell firearms during judicial review.  And at the conclusion of a full trial on the merits, if the court decided that ATF incorrectly revoked Heartland's FFL, maintaining an FFL to buy and sell firearms would equal Heartland's full judicial remedy.  Heartland thus seeks a preliminary injunction that would afford Heartland "all the relief that it could recover at the conclusion of a full trial on the merits."  *Id.*  Heartland thus faces a heightened burden to present "heavy and compelling" evidence beyond the usual preliminary injunction showing.  *Id.*

The court denies Heartland's requested injunction regardless.  Even without the heightened preliminary injunction standard, Heartland still fails to establish likelihood of success on the merits.  And Heartland, as the moving party, "must prove that all four of the equitable factors weigh in its favor[.]" *Sierra Club*, 539 F. App'x at 888 (emphasis omitted).  Simply, Heartland hasn't.

7

The court analyzes the parties' arguments about each of the preliminary injunction elements under the original, regular standard, beginning with Heartland's likelihood of success on the merits.

### A. Success on the Merits

#### 1. Legal Standard

The district court conducts "de novo judicial review" of ATF's decision to revoke a license, confining its inquiry to whether ATF "was not authorized to . . . revoke the license." 18 U.S.C. § 923(f)(3); *Borchardt Rifle Corp. v. Cook*, 684 F.3d 1037, 1042 (10th Cir. 2012). Congress delegated authority to the Attorney General to enforce the GCA. 18 U.S.C. § 923(c). This standard doesn't permit district courts to decide whether they would've reached the same conclusion as ATF or exercised discretion in the same fashion as the ATF did during the administrative proceeding. In other words, while "the court conducts *de novo* review, § 923(f) restricts the court's decision to determining whether the license revocation was authorized." *C.W. Rose Co. v. Gonzales*, No. 05-CV-308-TCK-FHM, 2007 WL 9789644, at *3 (N.D. Okla. Mar. 14, 2007) (citation and internal quotation marks omitted) (collecting cases); *see also Borchardt Rifle Corp. v. Cook*, 727 F. Supp. 2d 1146, 1158 (D.N.M. 2010), *aff'd,* 684 F.3d 1037 (10th Cir. 2012) (collecting cases). To succeed on this element, therefore, Heartland must show that the ATF is unable to establish that it committed even one willful violation of the GCA, even once.

ATF revoked Heartland's FFL for willfully violating several sections of the GCA. Section 923(e) of the GCA provides that:

> The Attorney General may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has *willfully* violated any provision of this chapter or any rule or regulation . . . at any place in which firearms are sold under the license to persons who are not licensees.

8

(emphasis added).  A licensee acts willfully when he exhibits "plain indifference toward known legal obligations."  *Borchardt*, 684 F.3d at 1042.  "The magnitude of the violations—both their quantity and seriousness—can support a finding of willfulness."  *CEW Props., Inc. v. U.S. Dep't of Just.*, 979 F.3d 1271, 1280 (10th Cir. 2020).  And while ATF may revoke a license for even one willful violation, the Tenth Circuit tends to find repeated violations more indicative of purposeful disregard or plain indifference.  *Borchardt*, 684 F.3d at 1043–44 (finding that petitioner willfully violated the GCA when he had made "numerous repeated mistakes"); *CEW Props.*, 979 F.3d at 1280 (finding that petitioner willfully violated the GCA when he had hundreds of violations).

A court properly may infer willfulness if the licensee "(1) knew of the requirement or (2) knew generally that [its] failure to act would be unlawful."  *Borchardt*, 684 F.3d at 1043 (quoting *RSM, Inc. v. Herbert*, 466 F.3d 316, 322 (4th Cir. 2006)); *see CEW Props.*, 979 F.3d at 1279 (inferring licensee's (1) knowledge of requirements where he had signed a form certifying that he'd received training on the violations and from the length of time licensee had held his license; and (2) knowledge that failure to act is unlawful when licensee periodically complied with license requirements).  Law enforcement officials' repeated warnings, "accompanied by explanations of the severity of the failures," also indicate that the licensee knew about GCA requirements.  *RSM*, 466 F.3d at 322; *but see Paducah Shooters Supply, Inc. v. Rogers*, No. 5:23-CV-88-BJB, 2023 WL 5769364 *1 (W.D. Ky. Aug. 12, 2023) (agreeing with ATF that GCA violations aren't "willful" when they're "due to inattentiveness, not . . . disregard for the law").

    2.    Analysis

First, and as an initial matter, the court addresses ATF's shift in enforcement policy, to provide context for the analysis that follows.  Heartland argues that it's likely to win on the

9

merits because the government cites no cases where ATF has revoked an FFL for one willful violation.  Doc. 5 at 3, 4, 12 (Pet.'s Memo. Supp. Mot.) (citing *Streicher's, Inc. v. Hummel*, No. CV 23-995 (PAM/ECW), 2023 WL 3018680 (D. Minn. Apr. 20, 2023) (enjoining ATF's FFL revocation when "the FFL had no prior violations, and the revocation was based upon a handful of common violations")); Doc. 17 at 4, 5 (Reply Mem. Supp. Mot. TRO & Preliminary Inj.).  But our Circuit has recognized that § 923(e) provides that just one willful violation is enough for ATF to revoke an FFL.  *CEW Properties*, 979 F.3d at 1273 ("The parties here agree that ATF could revoke a license based on one willful violation alone.") (citing *Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356, 362 (5th Cir. 2017) ("A single willful violation authorizes the ATF to revoke the violator's FFL[.]")); *see also Borchardt*, 684 F.3d at 1042 ("The parties agree that even one willful violation of the Gun Control Act could justify the revocation of [FFL's] license.").

At the September 15, 2023, hearing, both parties acknowledged ATF's July 2021 policy shift in its enforcement priorities.  Under the new policy, certain violations trigger an automatic ATF revocation hearing.[4]  Accordingly, the court takes judicial notice that ATF changed its enforcement position in July 2021.  Fed. R. Evid. 201(c)(1), 201(b)(2) (explaining that the court "may take judicial notice on its own" of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see Fact Sheet: Biden-Harris Administration Announces Comprehensive Strategy to Prevent and Respond to Gun Crime and Ensure Public Safety*, The White House (June 23, 2021), https://www.whitehouse.gov/briefing-room/statements-

---

[4] The government explains that while certain violations trigger a revocation hearing, they don't necessarily mandate FFL revocation even if the ATF makes a finding of willfulness.  In other words, ATF's shift in policy didn't eliminate § 923(e)'s willfulness requirement.

releases/2021/06/23/fact-sheet-biden-harris-administration-announces-comprehensive-strategy-to-prevent-and-respond-to-gun-crime-and-ensure-public-safety/ (confirming the government's statement that the Justice Department adopted a more rigid policy for willful, § 923(e) violations); *see also* News Release, ATF, *ATF Posts Results of Federal Firearm Licensee Compliance Inspections Involving Violations of the Department of Justice's Enhanced Regulatory Enforcement Policy* (Mar. 29, 2023), https://www.atf.gov/news/pr/atf-posts-results-federal-firearm-licensee-compliance-inspections-involving-violations (announcing that ATF, "will seek to revoke the licenses of dealers the first time that they violate federal law").  Having recognized ATF's enforcement policy shift, the court turns to Heartland's likelihood of success on the merits.

Here, Heartland hasn't shown it's likely to succeed on the merits of its case.  Heartland contests that the December 16 purchase (Violation 6:  False Statement or Representation) violated the GCA.  Doc. 5 at 6, 7 (Pet.'s Memo. Supp. Mot.).  But Heartland doesn't contest that it violated the GCA on the remaining violations.[5]  *Id.* at 8–12.  Instead, Heartland argues that it didn't violate the remaining violations GCA *willfully*.  *Id.*  Circumstantial evidence prevents the court from finding that Heartland is likely to prevail on this front.  In short, the record—at least as it exists now—suggests an inference that Heartland is unlikely to establish that none of its violations are willful.[6]

---

[5]  This includes Violations 2–5, 7–9, respectively:  Untimely Record of Dispositions, Failure to Conduct NICS Background Check, Failure to Timely Report Multiple Handgun Sales, Failure to Report Theft/Loss, Incomplete/Inaccurate ATF Form 4473, Failure to Correctly Record Identification, and Recording of Dispositions to Non-Licensees.  *See supra*, § I.

[6]  Heartland's Motion for TRO and Preliminary Injunction (Doc. 4) mainly focuses on the December 16 purchase.  Heartland maintains that this sale catalyzed the rest of ATF's charges.  The court doesn't analyze the December 16 purchase individually because ATF needs just one willful violation to revoke Heartland's FFL.  *Borchardt*, 684 F.3d at 1042.  So even if the court later finds that Heartland

Heartland is unlikely to avoid a finding of willfulness because Heartland "knew of the [GCA's] requirement[s]" and that its "failure to act [in compliance with the GCA] would be unlawful." *Borchardt*, 684 F.3d at 1043. The following four instances persuade the court that it's unlikely Heartland can avoid a willful violation. *First*, Roger Theede, Heartland's manager and "responsible person,"[7] signed forms attesting that he'd received training on the FFL regulations that Heartland must follow. Doc. 16-1 at 2 (2007 Acknowledgement); Doc. 16-2 at 2 (2017 Acknowledgement). Theede signed the 2007 and 2017 Federal Firearms Regulations Acknowledgement forms, indicating that an ATF officer had explained the regulations to him and that he "will be responsible for familiarizing [himself] with all of the laws and regulations governing [his] licensed firearms business." Doc. 16-2 at 2 (2017 Acknowledgement). *Second*, Heartland has held an FFL since 2006. Heartland has had ample time during those 17 years of licensure to familiarize itself with FFL requirements. *Third*, Heartland has complied with GCA regulations in the past, indicating that Heartland "knew of the requirements[.]" *Borchardt*, 684 F.3d at 1043. And *fourth*, though Heartland hadn't received a formal reprimand until 2022, ATF verbally notified Heartland of procedural violations in 2017. Doc. 16-3 at 7, 8 (ATF Hr. Tr. 85:12–86:9). Mr. Theede testified that an ATF Inspector identified errors during the 2017 inspection and discussed those violations with him. *Id.* Those findings nullify a finding, at this stage at least, that Heartland will prevail on the plain indifference, or willfulness question. The

---

operated lawfully during the December 16 transaction, a finding that Heartland willfully violated the law during just one of over 50 other occasions suffices to deny Heartland's preliminary injunction request.

7       "The ATF defines 'responsible person' as follows: '[i]n a Sole Proprietor, in the case of a Corporation, Partnership, or Association, any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, policies, and practices of the Corporation, Partnership, or Association, insofar as they pertain to firearms." *A-TAC Gear Guns Uniforms LLC v. U.S. Dep't of Just.*, 530 F. Supp. 3d 1033, 1035 n.1 (D. Colo. 2021) (internal citation and quotation marks omitted).

known facts suggest that Heartland had knowledge of the GCA and related ATF regulatory requirements but failed to comply with them.

In sum, Heartland hasn't shouldered its burden to make a strong showing of likelihood of success on the case's merits. Because Heartland thus fails to meet the "the first and most important preliminary-injunction factor," *Andersen*, 882 F.3d at 1229, the court may end its analysis here. *Reyes*, 665 F. App'x at 747. The court nevertheless briefly considers the remaining factors, in turn, below.

### B.     Irreparable Harm

#### 1.      Legal Standard

Petitioner Heartland also must establish that it'll sustain irreparable harm if the court doesn't issue a preliminary injunction. *Winter*, 555 U.S. at 22. To demonstrate irreparable harm, Heartland must show that its injury is "certain and great." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1190 (10th Cir. 2008) (citation and internal quotation marks omitted). Claims of "[p]urely speculative" harm or conclusory assertions of harm won't suffice. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009). And simple economic loss alone doesn't amount to irreparable harm. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). Instead, Heartland must establish that monetary damages won't adequately compensate for its loss. *RoDa*, 552 F.3d at 1210. But our Circuit long has recognized that an award of money damages that Heartland cannot recover "for reasons such as sovereign immunity constitutes irreparable injury." *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1157 (10th Cir. 2011) (citation and internal quotation marks omitted) (collecting cases).

Heartland can demonstrate it'll sustain non-monetary damages by demonstrating "the difficulty in calculating damages, the loss of a unique product, and existence of intangible harms

13

such as loss of goodwill or competitive market position." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1264 (10th Cir. 2004). Our Circuit also has considered the threat of going out of business to amount to irreparable harm, given that "[d]amages flowing from anticipated future injury to one's . . . business interests are especially difficult to calculate." *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1012 (10th Cir. 2018); *but see Paducah Shooters*, 2023 WL 5769364 at *8 (finding that petitioner's inability to lawfully sell guns would cause petitioner irreparable harm because it will cost the business "not only sales, but also goodwill critical to the value of a going concern").

### 2.     Analysis

Heartland sufficiently has established that it will suffer meaningful financial harm if it can't purchase and sell firearms. At the September 15 hearing, Heartland testified that it would lose about $100,000 annually in firearm sales alone without an FFL. It arrived at this figure based on Heartland's 2022 firearm sales. Heartland's testimony presents a relatively specific estimate of expected injury absent injunctive relief. And while monetary damages usually don't qualify as irreparable injury, they do in this case for two reasons. *First*, ATF enjoys sovereign immunity as a government entity—*i.e.,* the court can't order the federal government to pay money damages.[8] And the Tenth Circuit considers financial injury irreparable harm when

---

[8]     "Absent an 'unequivocally expressed' statutory waiver, the United States, its agencies, and its employees (when functioning in their official capacities) are immune from suit based on the principle of sovereign immunity." *Cnty. of Suffolk, N.Y. v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010) (quoting *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260–61 (1999)). Congress expressly waived federal sovereign immunity in § 702 of the Administrative Procedure Act for a narrow set of cases where a plaintiff seeks non-monetary damages. Under § 702, plaintiff may sue a federal agency if it requests equitable relief or where the court orders defendant to "transfer a specific *res* to plaintiff." *Id.* at 140–41; *see also Modoc Lassen Indian Hous. Auth. v. U.S. Dep't of Hous. & Urb. Dev.*, 881 F.3d 1181, 1199 (10th Cir. 2017) (holding that sovereign immunity precluded the district court's money damages award to Indian tribes payable from federal agency funds). But § 702's limited waiver doesn't appear to encompass Heartland's situation here. So, sovereign immunity likely prevents Heartland from recovering money damages from ATF if Heartland were to prevail and try to recover damages from ATF.

14

movant can't recover money damages.  *Crowe & Dunlevy*, 640 F.3d at 1157.  *Second*, a $100,000 annual profit-loss identifies a considerable risk to Heartland's entire business.  And "the destruction of a business could amount to irreparable harm."  *Husky Ventures*, 911 F. 3d at 1012–13 (collecting cases).

In short, the court finds that Heartland, for present purposes, sufficiently has shown that it's likely to suffer harm that money cannot cure unless the court enjoins ATF from enforcing the FFL revocation.  Heartland thus has shouldered its burden on this second element of the injunction standard.

### C.      Balance of Harms and Public Interest

Finally, the parties disagree which side has the better public interest argument.  Petitioner Heartland argues that its irreparable harm outweighs any harm ATF will suffer because an injunction wouldn't financially injure ATF, nor harm its intangible interests.  And Heartland has operated for almost a year since ATF discovered the violations.  Heartland asserts that an injunction will serve the public interest because it helps the public exercise its Second Amendment rights to keep and bear arms.  And an injunction would permit Heartland to remain a functioning business who provides jobs for the store's employees, so they can provide for themselves and their families.

ATF disputes that revoking Heartland's FFL will harm the community's Second Amendment rights, distinguishing this one where a court enjoined ATF from revoking an FFL because the business supplied many of the weapons used by a state's law enforcement officers. *Streicher's*, 2023 WL 3018680 at *1 (granting a firearm retailer's preliminary injunction when it was "the exclusive supplier of rifles" to a state SWAT team and supplied over 85% of a large

metropolitan police department's firearms). Instead, ATF responds, a business operating out of compliance with FFL violations threatens public health and safety.

Heartland's argument isn't persuasive. Heartland adduced no facts suggesting that the pertinent community can't purchase firearms elsewhere, or that it's a major supplier of local law enforcement. And while it's "always in the public interest to prevent the violation of a *party's* constitutional rights," Heartland doesn't allege its own Second Amendment harm, but, instead, the alleged harm of the community at large. *Free the Nipple-Fort Collins*, 916 F.3d at 807 (quoting the lower court, 237 F. Supp. 3d. 1126, 1134 (D. Colo. 2017)) (emphasis added). The community isn't a party to this case. Also, Heartland's lack of GCA compliance threatens the public. "When a firearms dealer cannot account for guns or fails to ensure that guns are sold to authorized persons, the public safety is directly and meaningfully implicated." *RSM*, 466 F.3d at 324.

So, in sum, the balance of harms and public interest factors are somewhat mixed. But the court concludes, at bottom, that Heartland has failed to establish that the preliminary injunction it seeks "would not be adverse to the public interest." *Sierra Club,* 539 F. App'x at 889. This factor thus disfavors granting the relief sought by Heartland.

### III.    Conclusion

Heartland has established irreparable harm. But at least in this early stage of the case, Heartland has failed to demonstrate likelihood of success on the merits or that a balance of the harms and public interest weighs in its favor. Heartland hasn't met the "heavy and compelling" burden it's required to carry on each of the preliminary injunction elements. The court thus denied Heartland's motion for injunctive relief.[9]  *See* Doc. 20.

---

[9]    Fed. R. Civ. P. 65(c) provides that the court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the

**Dated this 29th day of September 2023, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**

---

costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Heartland asked the court to waive a bond payment if it granted Heartland's Motion for TRO and Preliminary Injunction (Doc. 4). Because the court denies Heartland's motion, this result moots the bond issue, and the court needn't decide this issue.